# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLYN BRADDOCK TOWNSEND,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. CV 15-00194-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.

## INTRODUCTION

Carolyn Braddock Townsend ("Plaintiff") challenges the Commissioner's denial of her protectively filed application for supplemental security income ("SSI") following an administrative law judge's ("ALJ") decision that she had not been under a disability, as defined in the Social Security Act. Administrative Record ("AR") 22. For the reasons stated below, the Commissioner's decision is AFFIRMED.

/ / /

/ / /

## II.

## PROCEEDINGS BELOW

On September 28, 2011, Plaintiff protectively filed an application for SSI[1] alleging disability beginning September 30, 2009 (her alleged onset date ("AOD")). AR 13. Plaintiff's claim was denied initially on January 11, 2012 and on reconsideration on August 22, 2012. *Id.* On September 6, 2012, Plaintiff filed a written request for hearing, which occurred on February 27, 2013. *Id.* Represented by a non-attorney representative, Plaintiff appeared and testified, as did an impartial vocational expert ("VE"). *Id.* On March 22, 2013, the ALJ found that Plaintiff was not disabled, pursuant to the Social Security Act,[2] from the AOD through the date of the decision. *Id.* at 22. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *Id.* at 5-8. Plaintiff filed the instant action in this Court on January 30, 2015. Dkt. No. 1.

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled. 20 C.F.R. §§ 404.1520, 416.920; *see also Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the AOD. AR 15. At **step two**, the ALJ found that Plaintiff has the following severe impairment: diabetes with possible peripheral neuropathy. *Id.* at 16. At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 18 (citations omitted).

///

---

[1] Plaintiff also protectively filed an application for disabled widow's benefits on September 28, 2011. AR 13.

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

At **step four**, the ALJ found that Plaintiff possessed the residual functional capacity ("RFC") to "perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c)." *Id*. Based on Plaintiff's RFC, and the testimony of the VE, the ALJ determined that Plaintiff could perform her past relevant work "as actually and generally performed in the regional and national economy." *Id*. at 22. Accordingly, the ALJ did not proceed to **step five**, and instead found that Plaintiff was not disabled pursuant to the Social Security Act. *Id*.

## III.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v.*

3

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV.
## DISCUSSION

Plaintiff raises two issues: (1) whether the ALJ erred at step two of the five-step sequential evaluation process in finding that Plaintiff's mood disorder and right leg lipoma were not severe impairments; and (2) whether the ALJ erred at step four in finding that Plaintiff would be able to perform her past relevant work. Plaintiff's Memorandum in Support of Complaint ("Pl. Memo.") at 2-8, Dkt. No. 23.

**A.     Plaintiff's "Severe" Impairments At Step Two**

Plaintiff contends that the ALJ committed reversible error by not finding that her "right lower extremity lipoma/cyst" and "schizo affective disorder" were severe impairments. Pl. Memo. at 2-3. Defendant, in turn, contends that the ALJ's finding was supported by substantial evidence in the record. *See* Memorandum in Support of Defendant's Answer ("Def. Memo.") at 1-15, Dkt. No. 25.

The step two inquiry is meant to be a *de minimis* screening device. *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert,* 482 U.S. 137, 153–54, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). At step two, the ALJ identifies a claimant's severe impairments, *i.e.*, impairments that significantly limit his or her ability to do basic work activities.[3] 20 C.F.R. § 404.1520(a)(4)(ii); *Smolen,* 80 F.3d at 1290. A determination that an impairment is not severe requires evaluation of medical findings describing the impairment, and an informed judgment as to its

---

[3] Basic work activities are "the abilities and aptitudes necessary to do most jobs[.]" 20 C.F.R. § 404.1521(b).

limiting effects on a claimant's ability to do basic work activities. Social Security Ruling ("SSR") 85–28, 1985 WL 56856, at *4 (Jan. 1, 1985).[4]

The ALJ must take into account subjective symptoms in assessing severity, *Smolen,* 80 F.3d at 1290, but "medical evidence alone is evaluated … to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28 at *4. An impairment or combination thereof may properly be found not severe if the clearly established objective medical evidence shows only slight abnormalities that minimally affect a claimant's ability to do basic work activities. *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005); *Smolen,* 80 F.3d at 1290.

### 1. **Plaintiff's Right Leg Lipoma**

At step two, the ALJ found that Plaintiff's "diabetes with possible peripheral neuropathy" was a severe impairment but that Plaintiff's "right leg lipoma" was not because it caused no more than a minimal limitation in Plaintiff's ability to do basic work activities. AR 16. Plaintiff disagrees, and argues that the "medical evidence … supports the fact that [her] impairments are clearly severe…." Pl. Memo. at 3.

Plaintiff cites three objective medical records to support her contention. On May 27, 2010, Plaintiff presented at Barstow Community Hospital complaining of right leg pain and swelling. AR 224, 321, 323-25. Plaintiff was discharged with a prescription for pain medications and was instructed to follow-up with her private doctor. *Id.* at 324. Nearly 16 months later, on September 20, 2011, Plaintiff again presented at Barstow Community Hospital with similar complaints. *Id.* at 222, 272-77. Diagnostic testing done that day revealed the right leg lipoma.[5] *Id.* at 225, 275,

---

[4] SSRs do not have the force of law, but a reviewing court generally accords them some deference. *Holohan v. Massanari,* 246 F.3d 1195, 1202 n.1 (9th Cir. 2001).

[5] The Court notes that, in addition to diagnosing a right leg lipoma, the emergency room physician further found that Plaintiff was suffering from acute hyperglycemia due to non-compliance with her medications and instructed Plaintiff that she needed to take her medications and insulin as directed by her doctor. AR 276, 290. Other records show similar instances of hyperglycemia and non-compliance. *See, e.g., id.* at 294 (noting acute hyperglycemia due to non-compliance, and a blood glucose

288-89.  And then, nearly eight months later, on May 9, 2012, Plaintiff complained of pain associated with her right leg lipoma during what appears to be an unrelated medical visit.  *Id.* at 264 ("The patient is here to see podiatry clinic today.").

The foregoing establishes that Plaintiff has a right leg lipoma.  However, that fact is not in dispute; the ALJ found that Plaintiff's lipoma constitutes a medically determinable impairment.  But mere diagnosis of an impairment—or even treatment for it—is insufficient to establish severity at step two, especially when the *objective* medical evidence in the record fails to show any *work-related limitations* connected to the impairment.  *See Harvey v. Colvin*, 2013 WL 3899282, at *5 (C.D. Cal. July 29, 2013) (citing *Matthews v. Shalala,* 10 F.3d 678, 680 (9th Cir. 1993)).  There are no medical source statements in the record that support Plaintiff's allegations as to the effect of her lipoma on her ability to do basic work activities.  Plaintiff cites her own subjective complaints to support her position.  Pl. Memo. at 3 ("Ms. Townsend testified that she was limited to standing only 10 to 15 minutes and walking up to 2 to 3 blocks … [and] that she was only able to lift approximately 10 pounds and sit for only 30 minutes at a time.") (citing AR 31-32), 4 ("Plaintiff maintains that her right leg impairment would severely impact … her ability to sustain full time … employment if she were required to stand and/or walk more than just a few minutes at a time.  Thus, her right leg impairment is indeed a "severe" impairment under the Social Security's definition.").  In fact, the objective evidence suggests otherwise.

For example, the ALJ accorded the "greatest weight" to the opinion of Robin Alleyne, M.D.,[6] a board-certified physician who personally observed and examined Plaintiff on December 6, 2011, less than three months after her September 20, 2011 lipoma-related hospital visit.  AR 21.  Dr. Alleyne opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; could stand and walk for six hours

---

level of 330; much higher than the "70-99" reference range, *see id.* at 283).  Though not clear from the record, Plaintiff's apparently consistent non-compliance with her diabetes treatment may have resulted in neuropathy and contributed to her leg pain.
[6] The ALJ discussed Dr. Alleyne's opinion as part of his step four analysis.  AR 21.

6

of an eight-hour workday; had no sitting restrictions; and could frequently climb, balance, kneel, and crawl. *Id.* at 21, 237-41. The state agency medical consultants reached similar conclusions in August 2012. *Id.* at 72-91. Thus, the Court finds that the ALJ properly concluded that Plaintiff's right leg lipoma was not a "severe" impairment based on the objective evidence, which shows only an abnormality that minimally affects Plaintiff's ability to do basic work activities.

### 2. **Plaintiff's "Mood Disorder"**

The ALJ further found Plaintiff's "mental impairment of a mood disorder" to be non-severe because it only minimally limited her ability to do basic mental work activities. AR 16. Plaintiff disagrees with the ALJ's analysis and maintains that his failure to deem her "schizo affective disorder" severe "constitutes reversible error." Pl. Memo. at 4. However, Plaintiff's argument is unpersuasive because there is no objective medical evidence to support reversing the ALJ's severity determination.

The record clearly establishes that Susan Templeton, a licensed marriage and family therapist, assessed Plaintiff with a schizoaffective disorder, depressed type, on October 17, 2012. AR 376. The record further establishes that Ms. Templeton's assessment was repeated by Denise Persichino, D.O., on December 19, 2012 and on January 30, 2013. *Id.* at 371-73. But a medical diagnosis, alone, is insufficient to establish a "severe" impairment. *Febach v. Colvin,* 580 F. App'x 530, 531 (9th Cir. 2014) ("Although [claimant] was diagnosed with depression, that diagnosis alone is insufficient for finding a 'severe' impairment[.] … There was sufficient evidence … for the ALJ to conclude that [his] depression is not 'severe,' including reports by at least three of [his] physicians suggesting that his impairment is 'non-severe.'"). Indeed, as the Ninth Circuit, in *Parks v. Astrue*, 304 F. App'x 503 (9th Cir. 2008), noted in affirming an ALJ's step two finding:

> Although treating psychiatrists diagnosed [claimant] with major depression in both 2001 and 2004, neither expressed an opinion as to any resulting limitations, and [claimant] infrequently

> sought mental health treatment. Further, the state agency examining psychologist found only mild functional limitations, with the most recent examination reporting a 'fair to good' prognosis and finding that [claimant] had the ability to perform detailed and complex tasks, maintain adequate concentration, persistence and pace, maintain adequate social functioning, and adapt to the usual stresses of competitive work.

*Id.* at 506.

Here, neither Ms. Templeton nor Dr. Persichino expressed an opinion as to the effect(s), if any, of Plaintiff's diagnosed impairments on her ability to do basic work activities. *See* AR 371-73, 376. Furthermore, as noted by the ALJ, Plaintiff's "treatment notes indicate sparse treatment." *Id.* at 16. Plaintiff's primary doctor's treatment notes occasionally reference depression and anxiety, but before Plaintiff's three visits to Barstow Counseling center, it does not appear as though Plaintiff ever sought regular treatment. *See, e.g.*, AR 224, 243-46, 248, 250, 253-56.

Plaintiff argues that because Margaret Donohue, Ph.D., a psychologist who evaluated Plaintiff on November 25, 2011, *see* AR 230-36, found "that [she] *may* have difficulty interacting with others based on her interactions with individuals at the time of the consultative examination[,]" the ALJ erred in finding that Plaintiff could perform the duties of a home health aide and child-care worker. Pl. Memo. at 5 (emphasis added); *see also* AR 235. But Dr. Donohue's finding that Plaintiff *may* have interactional difficulties, at most, represents a minimal limitation in Plaintiff's ability to do basic mental work activities, and does not support concluding that her impairments were severe. *See Webb,* 433 F.3d at 687; *Smolen,* 80 F.3d at 1290. Moreover, Plaintiff failed to mention that most of Dr. Donohue's findings support the ALJ's severity conclusion. For example, Dr. Donohue stated that:

> If the claimant was adequately motivated, she would be able to perform simple tasks with no difficulty. She would have no difficulty to understand, remember and carry out detailed and complex instructions. She would have no difficulty to make

8

>       simplistic work-related decisions without special supervision.
>       She would have no difficulty to comply with job rules such as
>       safety and attendance. She would have no difficulty to respond
>       to change in a normal workplace setting.

AR 235.

Dr. Donohue was unable to assess whether Plaintiff had "problems with pace and persistence due to [her] lack of cooperation." *Id.* In fact, Dr. Donohue accused Plaintiff of malingering, which casts doubt upon Plaintiff's credibility. *Id.*; *Mohammad v. Colvin*, 595 F. App'x 696, 697 (9th Cir. 2014) (citing *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040-41 (9th Cir. 2003)) (finding that evidence of malingering is sufficient to support a negative credibility determination).[7]

Thus, the Court finds that the objective medical evidence supports the ALJ's conclusion that Plaintiff's "medically determinable impairment of a mood disorder does not cause more than a minimal limitation in [her] ability to perform basic work activities and is therefore nonsevere." AR 16.

### 3. **Harmless Error**

Even assuming that the ALJ incorrectly found that Plaintiff's right leg lipoma and mood disorder did not constitute "severe" impairments, any error was harmless.

First, step two was resolved in Plaintiff's favor, *i.e.*, the ALJ found Plaintiff's "diabetes with possible peripheral neuropathy" to be severe, and properly continued the process until finding that Plaintiff was able to perform past relevant work at step four. *Hickman v. Comm'r Soc. Sec. Admin.*, 399 F. App'x 300, 301 (9th Cir. 2010) (any error in the ALJ's failure to find an impairment severe was harmless, in part, because the ALJ found that claimant "suffered from other severe impairments and, thus, step two was … resolved in [her] favor"); *Burch*, 400 F.3d at 682 ("Assuming without deciding that [omitting obesity at step two] constituted legal error, it could

---

[7] The ALJ discounted Plaintiff's credibility on a number of grounds, including Dr. Donohue's malingering allegation. *See* AR 17, 19-21. Plaintiff has not challenged the ALJ's credibility determination.

9

only have prejudiced [claimant] in step three (listing impairment determination) or step five (RFC) because the other steps … were resolved in her favor.").

Second, the ALJ considered all of Plaintiff's impairments during his analysis at step four. *See, e.g.,* AR 18 ("[T]he undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]"), 19 ("[Plaintiff's] allegations of debilitating pain and mental problems are inconsistent with the objective medical evidence, which indicates an attempt by the claimant to exaggerate the severity of her symptoms."), 20 ("The medical evidence indicates the claimant received routine conservative treatment for complaints of diabetes with neuropathy, right leg pain, and depression."); *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (even if the ALJ erred by not including an impairment at step two, any error was harmless because the ALJ considered the limitations posed thereby at step four).

Thus, the ALJ's supposed step two error does not warrant reversal.

## B. **"Past Relevant Work" At Step Four**

Plaintiff contends that the ALJ "committed reversible error at step … four of the sequential evaluation process in failing to properly assess Plaintiff's past work history." Pl. Memo. at 6. Defendant, in turn, contends that the ALJ properly found Plaintiff capable of performing her past relevant work. *See* Def. Memo. at 15-21.

### 1. **ALJ's Decision**

The ALJ found that Plaintiff could perform her past relevant work as a home health aide and child-care worker because neither would "require the performance of work-related activities precluded" by her RFC. AR 21. The ALJ explained his finding as follows:

> The [VE] reviewed the claimant's vocational file prior to the hearing. The [VE] was present to hear the claimant's testimony and to ask questions. Based on the claimant's testimony and statements of record, the [VE] described the claimant's past relevant work as follows:

> 1. Home health aide, DOT[8] 354.377-014, is a medium, semiskilled (SVP[9] 3) occupation pursuant to the DOT and as performed by the claimant; and
> 2. Child-care worker, DOT 359.677-018, is a light, semiskilled (SVP 4) occupation pursuant to the DOT and as performed by the claimant.
>
> Having been asked to assume a person with the same, age, education, and work experience as the claimant, and a [RFC] as stated in the finding immediately prior to this one, the [VE] testified that such an individual would be able to perform the past work of a home health aide and child-care worker as actually performed by the claimant and as generally performed in the regional and national economy.
>
> The testimony of the [VE] is consistent with the DOT, and the undersigned accepts it. In comparing the claimant's [RFC] with the physical and mental demands of work as a home health aide and child-care worker, the undersigned has determined the claimant is able to perform all of this past relevant work as actually and generally performed based on the testimony of the [VE].

AR 22. Based on the foregoing, the ALJ concluded that Plaintiff was not disabled pursuant to the Social Security Act. *Id.*

### 2. **Analysis**

Plaintiff offers three arguments to support her claim of reversible error. First, Plaintiff argues that neither occupation identified by the ALJ (*i.e.*, home health aide and child-care worker) was "performed at a significant gainful activity level[] such that [it] should be considered as past relevant work." Pl. Memo. at 6. Second, Plaintiff argues that because the record does not contain a description of Plaintiff's child-care worker job, it was improper for the ALJ to find that the job could be performed by Plaintiff "as performed." *Id.* at 7. Third, Plaintiff argues that she

---

[8] Dictionary of Occupational Titles (U.S. Department of Labor, 1991).
[9] Specific Vocational Preparation, as defined in Appendix C of the DOT.

11

never acquired the skills to perform those "occupations as described in the [DOT]." *Id.*

### a. Substantial Gainful Activity

At step four, the ALJ must decide whether a claimant is able to perform past relevant work ("PRW") given her RFC. *See* 20 C.F.R. § 416.920(f); *Lewis v. Apfel*, 236 F.3d 503, 515 (9th Cir. 2001). Prior work is PRW for purposes of a disability benefits application "when it was done within the last 15 years, lasted long enough for [the claimant] to learn to do it, *and was substantial gainful activity*." 20 C.F.R. § 416.965(a) (emphasis added); *Andry v. Colvin*, 2013 WL 5305903, at *3 (E.D. Cal. Sept. 19, 2013) (citing SSR 82-62, 1982 WL 31386 (Jan. 1, 1982)) ("[T]here are three elements to the existence of PRW: (1) 'recency,' (2) duration, and (3) *SGA*.") (emphasis in original). Here, the third element is at issue.

Substantial gainful activity is work that is done for pay or profit that involves significant mental or physical activities. *Lewis*, 236 F.3d at 515. "Earnings can be a presumptive … sign of whether a job is substantial gainful activity." *Id.* Plaintiff contends that her prior jobs (*i.e.*, home health aide and child-care worker) were not performed at "significant gainful activity levels such that they should be considered as [PRW]." Pl. Memo. at 6. Plaintiff explains her contention as follows:

> For example, the occupation of home health aide … resulted in Plaintiff getting paid $8,028 in the year 2007, $8,342 for 2008, and $6,940 for 2009. This equates to a monthly income ranging between $578 and $695 per month, well below the required SGA levels of $900 per month for 2007, $940 per month for 2008, and $980 per month for 2009.
>
> Similarly, Plaintiff's work as a child care worker in 2009 also does not rise to the level of significant gainful activity since it equates to a monthly income level of $857, well below the $980 per month required to constitute substantial gainful activity.
>
> Thus, based on the earnings record reflected at AR 173, Plaintiff has not engaged in any significant gainful activity and

> consequently no past relevant work relevant to the decision making in this matter.

Pl. Memo. at 6-7 (citations omitted). Defendant concedes Plaintiff's argument as to her health aide earnings, but contends that "Plaintiff is wrong in how she calculated, per SSR 83-35, [1983 WL 31257 (Jan. 1, 1983),] her monthly income for her child-care work." Def. Memo. at 16. This Court agrees.

The regulations state, in pertinent part, that if "your work as an employee … was continuous without significant change in work patterns or earnings, and there has been no change in the substantial gainful activity earnings levels, *your earnings will be averaged over the entire period of work requiring evaluation* to determine if you have done substantial gainful activity." 20 C.F.R. § 416.974a(a); *see also* 20 C.F.R. § 404.1574a(a); SSR 83-35 at *1 ("Earnings are generally averaged over the *actual period of time* in which work was performed.") (emphasis added). Averaged monthly earnings are then compared to regulatory limits to determine if substantial gainful activity has been presumptively performed. *See* 20 C.F.R. § 404.1574(b)(2) & 416.974(b)(2); *see also Lewis*, 236 F.3d at 515; SSR 83-35 at *3. Earnings are averaged over separate periods, not the "the entire period of work," (1) "[w]hen an individual works over a period of time during which the SGA level changes," in which case the earnings are averaged "over each period for which a different SGA level applies," or (2) "when there is significant change in work patterns or earnings during the period of work requiring evaluation[.]" SSR 83-35 at *4.

Plaintiff reported two jobs in the 15 years before she became unable to work due to her impairments: home health aide and child-care worker. AR 181. Plaintiff worked as a child-care worker from March 3, 2008 to September 30, 2009. *Id*. In 2009, Plaintiff's earnings from her child-care worker job were $10,290. *Id*. at 174. In 2008, work presumptively constituted substantial gainful activity if the monthly amount earned, on average, exceeded $940. Monthly Substantial Gainful Activity Amounts Chart, *available at* http://www.ssa.gov/OACT/COLA/sga.html. In 2009,

that amount increased to $980. *Id*. Because Plaintiff worked "over a period of time during which the SGA level change[d]," the Court may properly look at Plaintiff's 2009 earnings rather than the entire period of work. SSR 83-35 at *4. Plaintiff's average monthly earnings in 2009—which is calculated by dividing her earnings by the nine months that she worked (*i.e.*, January 2009 until September 2009)—were approximately $1,143.33. Thus, contrary to Plaintiff's assertion, her 2009 earnings exceed the amount which presumptively constitutes substantial gainful activity.

### b. *Child Care Worker Description*

At step four, the ALJ must determine whether a claimant can perform his or her [PRW] either as actually performed or as generally performed in the national economy." *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (citing *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001)); SSR 82-61, 1982 WL 31387, at *1-2 (Jan. 1, 1982). Explicit findings on PRW "as generally performed *and* as actually performed" are not required. *Pinto*, 249 F.3d at 845 (emphasis in original). Thus, here, even if Plaintiff's claim (that "[t]here is simply no factual basis" in the record to support the ALJ's finding that she can perform the job of child care worker "as performed," *see* Pl. Memo. at 7) is correct, her claim is incomplete in that it ignores the fact that the ALJ also found—based on Plaintiff's RFC, the VE's testimony and the DOT—that Plaintiff could perform PRW as generally performed in the national economy as well. AR 22; *see also* 20 C.F.R. §§ 404.1560(b)(2) & 416.960(b)(2).[10]

---

[10] The Commissioner "may use the services of [a VE], or other resources, such as the [DOT] … to obtain evidence we need to help us determine whether you can do your past relevant work, given your [RFC]. A [VE] may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's [PRW], either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a [VE] may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands

14

### c. *Occupational Skills*

Plaintiff "maintains that she at no time acquired the skill levels necessary for the performance of [the home health aide and child-care worker] occupations as described in the [DOT]". Pl. Memo. at 7. As Plaintiff notes, "home health aide" is listed as SVP 3, and "child-care worker" is listed as SVP 4 in the DOT. *Id.*

"'SVP' refers to the 'specific vocational preparation' level which is defined in the DOT as 'the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230 (9th Cir. 2009) (citing *Dictionary of Occupational Titles,* Appendix C, page 1009 (4th ed.1991)). SVP 3 is "over 1 month up to and including 3 months." *Dictionary of Occupational Titles,* Appendix C, page 1009 (4th ed.1991). SVP 4 is "over 3 months up to and including 6 months[.]" *Id.*

As stated in SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000):

> The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4; and skilled work corresponds to an SVP of 5–9 in the DOT. Although there may be a reason for classifying an occupation's skill level differently than in the DOT, the regulatory definitions of skill levels are controlling.

In her Disability Report, Plaintiff reported working as a home health aide for three years and three months, which is more than the one to three months required by typical workers to learn the techniques, acquire the information, and develop the facility for average performance in that occupation according to the DOT. AR 181.

/ / /

---

of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).

15

Similarly, Plaintiff reported working as a child-care worker for nine months, which is more than the three to six months required according to the DOT. *Id.*

Thus, the Court finds that Plaintiff had enough time to acquire the necessary skills for the home health aide and child-care worker occupations. Accordingly, the Court finds that the ALJ properly found that Plaintiff could perform her PRW.

### d. **Harmless Error**

Defendant contends that even "if the ALJ had erred in his Step Four finding, the error would be at most harmless because if the ALJ had proceeded to Step Five (determining whether Plaintiff was able to do any other work), Plaintiff would still be found not disabled under the Medical-Vocational Guideline (the Grids)." Def. Memo. at 19. However, while the ALJ may have satisfied his burden at step five by relying on the Grids, he did not do so in his decision. Rather, the ALJ ended his analysis at step four without making any step five findings. *See* AR 22. The ALJ's determination of non-disability cannot be affirmed on grounds not articulated by the ALJ. *See Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (reviewing courts may not uphold an agency decision on a ground not relied on by the agency) (citing *Sec. & Exch. Comm'n v. Chenery Corp.,* 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947)). However, because the Court has found that the ALJ's step four finding was proper, harmless error need not be shown here.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

16

## V.
## CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 30, 2015

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

## NOTICE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**